FILED

07 NOV 20 AM 8: 38

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GET OUTDOORS II, LLC,<br><br>                              Plaintiff,<br><br>     v.<br><br>CITY OF EL CAJON,<br><br>                              Defendants. | CASE NO: 03-CV-1437 W (RBB)<br><br>**ORDER GRANTING DEFENDANT CITY OF EL CAJON'S MOTION FOR SUMMARY JUDGMENT** |

On July 21, 2003, Plaintiff Get Outdoors II, LLC ("Get Outdoors") commenced this action against Defendant City of El Cajon ("El Cajon") claiming that El Cajon violated Get Outdoors' First Amendment rights. El Cajon now moves for summary judgment on all claims. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS** El Cajon's summary-judgment motion.

## I.    BACKGROUND

Get Outdoors is a Nevada limited liability company, authorized to operate outdoor advertising signs throughout the State of California. El Cajon is a political subdivision of the State of California.

1    Get Outdoors is pursuing opportunities in the outdoor advertising industry in
2 Southern California.  In the instant case, it seeks to post signs in El Cajon for the purpose
3 of communicating commercial and noncommercial messages regarding products, services,
4 ideas, candidates, issues, events, and other topics.  To that end, Get Outdoors negotiated
5 with various property owners in El Cajon and arranged to lease space to display its signs.
6 The properties are located in heavily commercial and industrial areas adjacent to major
7 roads.  On June 9, 2003, Get Outdoors submitted twelve sign-permit applications to El
8 Cajon.

9    On June 10, 2003, El Cajon informed Get Outdoors that only four applications for
10 off-premises signs could be submitted at one time, because four additional signs reached
11 the maximum allowable number of off-premises signs under El Cajon's Zoning
12 Ordinance.  Get Outdoors was asked to retrieve its applications, select four, and properly
13 resubmit.  Get Outdoors never resubmitted.  Instead, on July 24, 2003, Get Outdoors filed
14 its First Amended Complaint, seeking injunctive relief.  On September 30, 2003, El Cajon
15 adopted Ordinance No. 4752 repealing the Zoning Ordinance that Get Outdoors applied
16 under.

17    After a lengthy series of hearings and conferences, El Cajon moved this Court for
18 summary judgment, arguing that because they had enacted legislation replacing the
19 challenged ordinance, the case was moot.  On February 12, 2007, this Court denied the
20 motion, finding that Ordinance No. 4752 had expired, rendering the action not moot.
21 Additionally, based on the record at that time, this Court further held that Get Outdoors
22 had standing to sue, finding that El Cajon had not satisfied its burden of demonstrating
23 a constitutional basis for denying Get Outdoors' applications.

24    On April 24, 2007, the City adopted and passed Ordinance 4877 (the "Current Sign
25 Ordinance"), amending the challenged sign ordinance (the "Prior Sign Ordinance").  On
26 July 12, 2007, Get Outdoors filed a Second Amended Complaint in order to assert a claim
27 for breach of a settlement agreement.  In the complaint, Get Outdoors continues to allege
28 that El Cajon's Prior Sign Ordinance unconstitutionally favors commercial over

1  noncommercial speech. (Sec. Am. Compl., ¶ 15.)  Get Outdoors seeks both injunctive
2  relief and damages, arguing that it "would have collected substantial revenue on a monthly
3  basis from the signs for which it had requested permits" and that it "has suffered and
4  continues to suffer irreparable harm by being deprived of its free speech rights." (Id., ¶¶
5  104–05.)

6       On October 15, 2007, El Cajon moved this Court for summary judgment on all
7  claims.  El Cajon contends that Get Outdoors lacks standing to challenge the sign
8  ordinance and alternatively, that all of the above challenges are moot. El Cajon also
9  contends that it did not enter into a settlement agreement with Get Outdoors.

10

11  **II.    LEGAL STANDARD**

12       Summary judgment is appropriate under Rule 56(c) where the moving party
13  demonstrates the absence of a genuine issue of material fact and entitlement to judgment
14  as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322
15  (1986).  A fact is material when, under the governing substantive law, it could affect the
16  outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman
17  v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if
18  "the evidence is such that a reasonable jury could return a verdict for the nonmoving
19  party." Anderson, 477 U.S. at 248.

20       A party seeking summary judgment always bears the initial burden of establishing
21  the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The moving
22  party can satisfy this burden in two ways: (1) by presenting evidence that negates an
23  essential element of the nonmoving party's case; or (2) by demonstrating that the
24  nonmoving party failed to make a showing sufficient to establish an element essential to
25  that party's case on which that party will bear the burden of proof at trial. Id. at 322-23.
26  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary
27  judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630
28  (9th Cir. 1987).

1       If the moving party meets this initial burden, the nonmoving party cannot defeat

2 summary judgment merely by demonstrating "that there is some metaphysical doubt as

3 to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

4 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995)

5 (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in

6 support of the nonmoving party's position is not sufficient."). Rather, the nonmoving

7 party must "go beyond the pleadings and by her own affidavits, or by 'the depositions,

8 answers to interrogatories, and admissions on file,' designate 'specific facts showing that

9 there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

10

11 **III.**   **STANDING**

12       Get Outdoors raises three types of constitutional challenges. First, Get Outdoors

13 challenges the Ordinance on the basis that it is overbroad. (See Plt.'s Opp'n at 8:12–14;

14 Sec. Am. Compl., ¶¶ 74, 82.) Second, Get Outdoors argues that the Sign Ordinance is

15 content-based and impermissibly favors certain types of speech. (Plt.'s Opp'n at 13:19–21;

16 Sec. Am. Compl., ¶¶ 64, 69, 86, 90.) Third, Get Outdoors argues that the Ordinance lacks

17 constitutionally required procedural safeguards with respect to the City officials' level of

18 discretion and time limits of the initial decision-making process. (Plt.'s Opp'n at 10:18–23;

19 Sec. Am. Compl., ¶ 55, 60, 78.)

20       El Cajon contends that Get Outdoors does not have standing to pursue these

21 claims. Specifically, El Cajon argues that Get Outdoors has not suffered any actual injury

22 related to the complained of conduct and that a favorable decision is unlikely to redress

23 any injuries. (Mot. for Summ. J. at 15–16.) The Court agrees.

24

25     **A.**   **The overbreadth claims fail.**

26       To prove standing, a plaintiff must show (1) injury in fact, (2) causal connection

27 between the injury and the conduct complained of, and (3) a likelihood that the injury will

28 be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555,

560–61 (1992). In addition to these requirements, federal courts have added the

1    "prudential standing doctrine," which requires a court to ask whether "the plaintiff's claim

2    is sufficiently individualized to ensure effective judicial review."   Get Oudoors II, LLC

3    v. City of San Diego, __ F.3d __, 2007 WL 3197108 *2 (9th Cir. 2007).

4           As a general rule, a party may assert only his or her own rights and cannot raise

5    claims on behalf of parties not before the court.   Secretary of State Md. v. Joseph H.

6    Munson Co., Inc., 467 U.S. 947, 955 (1984).   In the First Amendment context, however,

7    a party may prosecute claims on behalf of third parties:

8              When a case concerns a challenge that a statute or ordinance is, on its
9              face, unconstitutional, particularly in the First Amendment context, the
               type of facial challenge at issue affects the standing analysis.   While a
10             plaintiff must demonstrate an injury in fact, a plaintiff may in some
               circumstances assert not just his own constitutional rights, but also the
11             constitutional rights of others.

12   Horizon Outdoor, LLC v. City of Industry, CA, 228 F. Supp. 2d. 1113, 1123 (C.D. Cal.

13   2002).   Thus, a plaintiff may challenge a law as overbroad arguing that the law is

14   constitutional as applied to him, but unconstitutional as to others.   Virginia v. Am.

15   Booksellers Ass'n, Inc., 484 U.S. 383 (1988).

16          But in asserting an overbreadth challenge, only the prudential standing doctrine is

17   eliminated.   Get Outdoors II, WL 3197108 *3 (citing Broadrick v. Oklahoma, 413 U.S.

18   601, 612 (1973)).   A plaintiff must still satisfy the three Lujan elements of standing, so that

19   he can satisfactorily frame the issues on behalf of non-parties.   See Munson, 467 U.S. at

20   956; Get Outdoors II, WL 3197108 *3; Gospel Missions of Am. v. City of Los Angeles,

21   328 F.3d 548, 554 (9th Cir. 2003).   Therefore, Get Outdoors may assert an overbreadth

22   claim only if the three Lujan factors are satisfied.

23          In Get Outdoors II, the Ninth Circuit evaluated plaintiff's standing to pursue an

24   overbreadth challenge against the City of San Diego's sign ordinance.   Plaintiff applied for

25   off-premises sign permits, and the City denied the permits under a provision banning all

26   off-premises signs.   In its summary-judgment motion, the City demonstrated that

27   irrespective of its ban on all off-premises signs, plaintiff's permit applications would have

28   been denied under a provision restricting the size and height of billboards.   Because the

size and height restrictions were not unconstitutional, the Ninth Circuit held that plaintiff's

1   injury could not be redressed, and thus affirmed the district court's order granting

2   summary judgment.

3       Just as in <u>Get Outdoors II</u>, here, El Cajon argues that even if Get Outdoors had

4   properly applied for the permits, the applications would have been denied under a

5   provision in the ordinance restricting the size and height of billboards. (Decl. of Alvey,

6   at ¶ 13–15.) Get Outdoors does not dispute this fact. Thus, if El Cajon's size and height

7   restrictions are enforceable, Get Outdoors' injuries are incapable of redress. <u>Get</u>

8   <u>Outdoors II</u>, 2007 WL 3197108 at *5.

9       Billboard regulation is a distinct area of the law and has been referred to as "the law

10  of billboards." <u>See</u> <u>Kovacs v. Cooper</u>, 336 U.S. 77, 97 (1949).

11

12      While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities'

13  police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose

14  other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs—just

15  as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.

16  <u>City of Ladue v. Gilleo</u>, 512 U.S. 43, 48 (1994) (citing <u>Ward v. Rock Against Racism</u>, 491

17  U.S. 781 (1989)). The Supreme Court has recognized that a city's interests in traffic safety

18  and aesthetics are sufficient government interests for the purposes of this analysis. <u>See</u>

19  <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, 507–08 (1981). And many courts

20  have found that a city need not present detailed proof that billboard regulations further

21  a legitimate state interest. <u>See e.g.</u> <u>Ackerley Communs. of the Northwest v. Krochalis</u>, 108

22  F.3d 1095, 1100 (9th Cir. 1997) (holding that <u>Metromedia</u> continues to control the

23  regulation of billboards and finding as a matter of law that Seattle's sign ordinance, enacted

24  to further the city's interest in aesthetics and safety, is a constitutional restriction on

25  commercial speech without detailed proof that the billboard regulation will in fact advance

26  the city's interests).

27      El Cajon's size and height restrictions simply limit billboard sizes to 300 square feet

28  each. (<u>See</u> Chapter 17.53.030A.) Thus, the restrictions leave open ample channels for

communication, and nothing in the record even remotely suggests that the restrictions are

1  unreasonable.   Indeed, the Ninth Circuit recently held that similar size and height

2  restrictions did not violate the First Amendment.[1]  Accordingly, the Court finds El Cajon's

3  size and height restrictions are enforceable.

4      Because El Cajon's size and height restrictions are enforceable, Get Outdoors'

5  permit applications would have been denied, regardless of whether other provisions in the

6  ordinance are unconstitutional .  Thus, a favorable decision would provide no redress to

7  Get Outdoors.  See Covenant Media, 493 F.3d at 429–30 ; Prime Media, 485 F.3d at

8  349–50; KH Outdoor, 482 F.3d at 1305.  Additionally, as the Ninth Circuit has recently

9  stated, damages are inappropriate under these circumstances.  See County of Riverside,

10  337 F.3d at 1115 ("Insofar as the. . . claim for damages based on the unconstitutionality

11  of the Original Ordinance remains live, no damages are warranted because the subject

12  billboards were independently illegal under that ordinance's content-neutral zoning, size,

13  and height provisions. . . ."); see also Get Outdoors II, 2007 WL 3197108.  Accordingly,

14  the Court finds that Get Outdoors lacks standing to bring its overbreadth challenge.[2]

15

16      **B.      The remaining claims also fail.**

17      Get Outdoors presents two remaining claims.  First, that the Sign Ordinance is

18  content-based and impermissibly favors certain types of speech. (Plt.'s Opp'n at 13:19–21;

19  Sec. Am. Compl., ¶¶ 64, 69, 86, 90.)   Second, that the Sign Ordinance presents an

20  unconstitutional threat of prior restraint. (Plt.'s Opp'n at 10:17–23; Sec. Am. Compl., ¶¶

21  55, 60.)

22      As stated above, Get Outdoors' applications were denied on constitutionally valid

23  grounds.   Therefore, Get Outdoors cannot show that it would ever be genuinely

24

25      [1] See Get Outdoors II, 2007 WL 3197108; Get Outdoors II, LLC v. City of Chula Vista,
26  2007 WL 3230393 (2007); Get Outdoors II, LLC v. City of Lemon Grove, 2007WL 3230395
27  (2007).

28      [2] In addition to the size and height regulation, the Court agrees with El Cajon's contention
that Get Outdoors lacks standing because it failed to comply with El Cajon's S Sign Overlay Zone
Regulation (Chapter 17.53.030), which the Court finds is enforceable.

1   threatened by an unconstitutional prior restraint or content-based restriction in this

2   instance. See Get Outdoors II, LLC, 2007 WL 3197108 *5 ("[B]ecause standing is

3   addressed on a claim by claim basis, an unfavorable decision on the merits of one claim

4   may well defeat standing on antoher claim if it defeats the plaintiff's ability to seek

5   redress.") Accordingly, Get Outdoors lacks standing to pursue its remaining claims.

6

7   **IV.   MOOTNESS**

8       Assuming, arguendo, that Get Outdoors did have standing to challenge the

9   permitting process, the Court agrees with El Cajon's contention that the case is now moot.

10      "Mootness is like standing, in that if it turns out that resolution of the issue

11  presented cannot really affect the plaintiff's rights, there is, generally speaking, no case

12  or controversy for the courts to adjudicate; no real relief can be awarded." Smith v.

13  University of Washington Law School, 233 F.3d 1188, 1193 (9th Cir. 2000). An action is

14  moot where the issues presented are no longer "live" or when the parties lack a cognizable

15  interest in the outcome. Jacobus v. Alaska, 338 F.3d 1095, 1102 (9th Cir. 2003). For

16  instance, often a case becomes moot when a challenged law is amended, repealed, or

17  expires. See e.g. Princeton University v. Schmid, 455 U.S. 100, 103 (1982) (case mooted

18  by substantial amendment of challenged regulations).

19      There are exceptions to the mootness doctrine. For example, when the defendant's

20  conduct is a wrong "capable of repetition, yet evading direct review," or when the

21  defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time.

22  Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1509 (9th Cir. 1994)("Noatak").

23      In Noatak, the plaintiff sought injunctive relief in a challenge to a regulatory

24  expansion of a revenue-sharing program. The Ninth Circuit found that the case was moot

25  because the statute pursuant to which the challenged regulations were promulgated had

26  been repealed. In reaching its decision, the Ninth Circuit held that the matter did not fall

27  within the "capable of repetition yet evading review" exception because there was no

28  reasonable expectation that the alleged injury would recur. Id. at 1510. The court further

held that the voluntary cessation exception to mootness did not apply because a "statutory

1   change. . . is usually enough to render a case moot, even if the legislature possesses the

2   power to reenact the statute after the lawsuit is dismissed." Id. The court noted that

3   "exceptions to this general line of holdings are rare and typically involve situations where

4   it is virtually certain that the repealed law will be reenacted." Id. at 1510-11. The court

5   held that the plaintiffs' fear of possible injury from the state's retention of an allegedly

6   discriminatory policy did not constitute a reasonable expectation that the same injury

7   would occur. Id.

8        As stated above, on April 24, 2007, the El Cajon adopted and passed the Current

9   Ordinance, which differs from its predecessor in several respects. For example, it contains

10   a "message substitution clause," which provides:

11

12       Subject to a property owner's consent, a noncommercial message of any
type may be substituted for any duly permitted or allowed commercial
message or any duly permitted or allowed noncommercial message,

13   provided that the sign structure or mounting device is legal, without
consideration of the message content. Such substitution of message

14   may be made without any additional approval or permitting. This
provision prevails over any more specific provision to the contrary

15   within this Chapter. The purpose of this provision is to prevent any
inadvertent favoring of commercial speech over noncommercial

16   speech, or favoring of any particular noncommercial message. This
provision does not create a right to increase the total amount of signage

17   on a parcel of land use, nor does it affect the requirement that a sign
structure or mounting device be properly permitted. (Ex. E.)

18

19   Among other changes, the Current Sign Ordinance also explicitly restricts the reviewing

20   City official from considering the message content of the proposed billboard.

21        Get Outdoors has presented no compelling evidence that El Cajon's enactment of

22   the new ordinance was taken in bad faith or was not genuine in any way. The Court does

23   not believe it is appropriate, in the absence of evidence to the contrary, to second guess

24   the motives of a legislative body in amending or modifying an ordinance that may

25   represent an effort to correct potential constitutional deficiencies in that particular law.

26   Moreover, there is no evidence before the Court that El Cajon intends to re-enact the

27   Prior Sign Ordinance if the case is dismissed.

28        Furthermore, because its permits were independently invalid, it cannot be said that

Get Outdoors suffered any injury compensable by even nominal damages. See

1   GetOutdoors II, LLC, 2007 WL 3197108; see also County of Riverside, 337 F.3d at 1115.

2   Accordingly, the Court finds that the case is also moot.[3]

3

4   **V.    BREACH OF CONTRACT**

5   Get Outdoors argues that El Cajon breached its settlement agreement. Get

6   Outdoors contends that counsel for El Cajon entered into an oral contract on behalf of

7   the City during settlement negotiations. (Plt.'s Opp'n at 23:9–14.) El Cajon counters that

8   no enforceable contract was entered into by the parties pursuant to Government Code

9   40602. California Government Code requires the Mayor's signature on a written contract

10   before it becomes enforceable. (Def.'s Mot. for Summ. J., at 19:16–20.) The Court agrees

11   with El Cajon.

12   El Cajon is a general law city. "The powers of a general law city include only those

13   powers expressly conferred upon it by the Legislature, together with such powers as are

14   necessarily incident to those expressly granted or essential to the declared object and

15   purposes of the municipal corporation." City of Orange v. San Diego County Employees

16   Retirement Assn., 103 Cal. App. 4th 45, 57 (2002) (quoting G.L. Mezzetta, Inc. v. City of

17   American Canyon, 78 Cal. App. 4th 1087, 1092 (2000)). The powers of such a city are

18   strictly construed, so that any fair and reasonable doubt concerning the exercise of a

19   power is resolved against the corporation. Id. A general law city must comply with state

20   statutes that specify requirements for entering into contracts. Id.

21   El Cajon is bound by California Government Code section 40602 which provides

22   that "[t]he mayor shall sign. . . [a]ll written contracts and conveyances made or entered into

23   by the city." Cal. Gov't Code § 40602. In this context, "shall" is mandatory. South Bay

24

25   [3]Get Outdoors relies on this Court's February 12, 2007 Order Denying Defendant's
      Motion for Summary Judgment, which found the case was not moot. (See Doc. No. 106.) But

26   the record currently before the Court differs from the previous record in two significant respects.
      First, El Cajon has since passed the Current Sign Ordinance thereby effectively repealing the

27   challenged ordinance. Second, El Cajon has now demonstrated that the limit of 4 billboard
      applications is based on Chapter 17.53.030 of the Municipal Code. El Cajon's previous motion

28   failed to identify the basis for the limitation, leading the Court to conclude that the limitation was
      based on a City official "exercising unbridled discretion." (Doc. No. 106, at 11.)

1  <u>Senior Housing Corp. v. City of Hawthorne</u>, 56 Cal. App. 4th 1231, 1236 (1997) (finding

2  no contract under Cal. Gov. Code section 40602 without the Mayor's signature.)  In <u>South

3  Bay</u>, the court, in interpreting Government Code section 40602, found that:

4   [B]y the plain language of the statutes, the City's power to make a
    contract is limited to the prescribed method and, by necessary
5   implication, that any other method is prohibited–which means that,
    unless it was signed by the Mayor, the contract with South Bay is void
6   and no implied liability can arise under that contract.

7  <u>Id.</u> at 1236.  Therefore, all contracts must be written and signed by the mayor.

8   Here, El Cajon's counsel negotiated during six months of settlement talks in front

9  of Magistrate Judge Brooks.  Throughout these talks, no written contract was ever signed

10  by El Cajon's mayor.  Get Outdoors claims that a judgment not enforcing the settlement

11  agreement would "make a mockery of Magistrate Judge Brooks' hard work in coordinating

12  the many settlement conferences as well as this Court's entire settlement conference

13  procedure."  (Plt.'s Opp'n at 25:22–25.)  However, this point is inapposite.  Any

14  "mockery" has already been addressed in Judge Brooks' thorough and well-reasoned order

15  sanctioning El Cajon in the amount of $16,914.01.  (<u>See</u> Doc. No. 90.)  Regardless of any

16  bad faith on the part of El Cajon, the mayor never signed any contract.  Therefore, there

17  is no enforceable contract to breach.

18

19  **VI.    CONCLUSION AND ORDER**

20   In light of the foregoing, the Court **GRANTS** El Cajon's summary-judgment

21  motion [Doc. No. 127].  The pre-trial conference scheduled for November 26, 2007 is

22  **VACATED**.  The Clerk shall close the District Court file.

23   **IT IS SO ORDERED.**

24

25  **DATE: November 19, 2007**

26  HON. THOMAS J. WHELAN
    United States District Court
27  Southern District of California

28                      - 11 -                      03cv1437w